# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT TWITCHELL,<br><br>    Plaintiff,<br><br>vs.<br><br>WEST COAST GENERAL CORP., *et al.*;<br><br>    Defendants. | 2:06-cv-04857-FMC-RZx<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS** |

This matter is before the Court on Defendant United States of America's Motion to Dismiss, filed May 29, 2006 (docket no. 87). The Court has read and considered the moving, opposition, and reply documents submitted in connection with this motion. The Court deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons and in the manner set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Kent Twitchell is a well known artist and muralist who has plied his craft in Los Angeles for some thirty years. (First Am. Compl. ("FAC") ¶¶ 24, 25.) In 1978, Twitchell started work on a mural called the "Ruscha Monument" that

would take him nine years to finish. (*Id.* ¶¶ 26-28.) The Los Angeles Job Corps invited Twitchell to undertake the project, which covered the face of the Job Corps Building located at 1031 Hill Street in Los Angeles. (*Id.*) The building (and the adjoining lot) is owned by the United States Department of Labor. (*Id.* ¶ 27.) When completed in 1987, the mural measured some 10,000 square feet, and depicted a seventy-foot tall Ed Ruscha, a prominent contemporary artist. (*Id.* ¶ 29.)

The Young Women's Christian Association ("YWCA") is the Job Corps Building's main tenant. (*Id.* ¶ 12.) At some point, the YWCA requested that the Department of Labor make some repairs to the Job Corps Building. (*Id.* ¶ 30.) An engineering firm, contractors, and subcontractors were hired to undertake the work. (*Id.* ¶ 30-32.) In November 2005, Defendant John Fraley, the Los Angeles Job Corps Center's Director of Administrative Services, contacted the City of Los Angeles's Cultural Affairs Department. (*Id.* ¶ 33.) In response to his inquiry about laws requiring the preservation of murals, Fraley was informed that federal and state laws require notice to be given to artists before their works are removed. (*Id.*)

On June 1, 2006, Nathan Zakheim, an art preservationist under contract with the City of Los Angeles, arrived at the Job Corps Building to remove some graffiti from the Ruscha Mural. (*Id.* ¶ 34.) He witnessed workmen punching holes in the building's exterior walls. (*Id.* ¶ 35.) Zakheim pleaded unsuccessfully with the workers to stop. (*Id.* ¶¶ 36-37.) When he returned the next day, where the Ruscha Mural once stood Zakheim found only a freshly painted beige wall. (*Id.* ¶ 38.)

Plaintiff alleges that the first notice he had of any plans to repaint the Job Corps Building was when Zakheim contacted him on June 2, 2006. (*Id.* ¶ 38.) On March 28, 2007, Plaintiff filed a First Amended Complaint.[1] In it, he alleges that Defendant United States of America was responsible for ordering the Ruscha Mural

---

[1] On August 22, 2007, Plaintiff filed a Second Amended Complaint, adding new defendants. Defendant United States of America did not join in the stipulation allowing the filing of the Second Amended Complaint.

2


to be painted over and pleaded causes of action for: (1) infringement of the right of integrity under the Visual Artists Rights Act, 17 U.S.C. § 106A; (2) intentional desecration of a work of fine art, Cal. Civ. Code § 987(c)(1), (e); (3) grossly negligent desecration of a work of fine art, Cal. Civ. Code § 987(c)(2), (e); (4) conversion; (5) negligence; and (6) unfair competition. On May 29, 2007, Federal Defendants United States of America and the Department of Labor responded with the instant motion to dismiss.

## STANDARD OF LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court will not dismiss claims for relief unless the plaintiff cannot prove any set of facts in support of the claims that would entitle her to relief. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998). All material factual allegations in the complaint are assumed to be true and construed in the light most favorable to the plaintiff. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.,* 380 F.3d 1226, 1229 (9th Cir. 2004) (citing *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000)). However, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994) (internal citations omitted).

## DISCUSSION

**I. Waiver of Sovereign Immunity**

Defendant United States of America moves to dismiss Plaintiff's first cause of action, for violation of the Visual Artists Rights Act of 1990 ("VARA"), 17

3

U.S.C. § 106A, on the grounds that the claim is barred by the doctrine of sovereign immunity. The Government then argues that Plaintiff's second cause of action, for violation of the California Art Preservation Act ("CAPA"), Cal. Civ. Code § 987, is barred by the doctrine of preemption, because VARA preempts CAPA.[2] Plaintiff's First Amended Complaint pleads that the federal government's sovereign immunity is waived by Federal Tort Claims Act, 28 U.S.C. § 1346(b). In addition, Plaintiff argues in his opposition to the Government's motion that immunity is also waived by 28 U.S.C. § 1498.

In a previous order in this case, the Court decided:

> [I]f, at a later date when the question is presented, the Court determines that the rights to the Ruscha Mural passed from the plaintiff prior to VARA's effective date, the plaintiff's claims under CAPA would be valid. If, however, it determines that the title remains with the plaintiff, as he asserts, his claim would lie properly under VARA and his CAPA claims would be preempted.

October 20, 2006 Order Den. PB Dewberry's Mot. to Dismiss (docket no. 36) at 7 (hereinafter "October 20, 2006 Order"). The question of whether title to the Ruscha Monument passed from Plaintiff to Defendants has yet to be presented to the Court. Accordingly, in deciding the instant motion, the Court must determine whether sovereign immunity bars Plaintiff's claim: (1) if title remains with Plaintiff, such that VARA governs his claim, and (2) if title passed before VARA's effective date, such that CAPA governs Plaintiff's action. The Court considers these questions in turn.

A. VARA

Congress enacted VARA in 1990 to comply with certain provisions of the Berne Convention. *See* Berne Convention Implementation Act of 1988, Pub. L. No. 100-568, 102 Stat. 2853 (1988); Joseph Zuber, *The Visual Artists Rights Act of 1990–What it Does, What it Preempts*, 23 Pac. L. J. 445 (1992) (discussing the legislative history of VARA). Before 1990, only a handful of states had laws

---

[2] The Government also argues that the Supremacy Clause prevents a state from regulating the activities of the federal government. Although this is most certainly a true statement of the law, it is not an issue presented by this case.

protecting artists' "moral rights."  Brent Sirota, Note, *The Visual Artists Rights Act: Federal Versus State Moral Rights*, 21 Hofstra L. Rev.  461, 462 n.5, 6 (1992) (listing nine states with moral rights statutes before VARA).  Moral rights (a translation from the French *droit moral*) are "the bundle of rights" that artists maintain in their works "even after the work[s] have been sold." *Lubner v. City of Los Angeles*, 45 Cal. App. 4th 525, 529-30 (1996) (citing Petrovich, *Artists' Statutory Droit Moral in California: A Critical Appraisal*, 15 Loyola L.A. L. Rev. 29 (1981)).

VARA protects the moral right of integrity.[3]  Under VARA, the author of a work of visual art has the right

> (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or other modification of that work is a violation of that right, and
> (B) to prevent any destruction of a work of reconized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

17 U.S.C. § 106A(a)(3).  The right of integrity belongs only to the author of the work of visual art, during his or her lifetime.  *Id.* § 106A(d).  The right may be waived, but not transferred.  *Id.* § 106A(e)(1).

There are no reported cases dealing with the question of whether the United States can be held liable under VARA.  It is well settled that the United States is immune from suit except where it has expressly waived sovereign immunity.  *United States v. Dalm*, 494 U.S. 596, 608 (1990) (citing *United States v. Testan*, 424 U.S. 392, 399 (1976)).  A waiver of sovereign immunity by the federal government must be "unequivocally expressed in statutory text . . . and will not be implied."  *Lane v. Peña*, 518 U.S. 187, 192 (1996) (citations omitted).  Furthermore, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  *Id.*

---

[3]VARA also protects the moral right of attribution, which is not at issue here. 17 U.S.C. § 106A(a)(1)-(2).

Here, there are two possible sources of waiver of sovereign immunity that would allow Plaintiff to proceed with a claim under VARA. The first, which Plaintiff alleges in the FAC, is the Federal Tort Claims Act, 28 U.S.C. § 2674. The second is found in 28 U.S.C. § 1498(b), which provides that claims for copyright infringement against the United States may be brought in the Court of Federal Claims. The Court considers each of these statutes.

### 1. The Federal Tort Claims Act

The Federal Tort Claims Act states: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. The Government argues, correctly, that the FTCA does not waive sovereign immunity for claims arising solely under federal law. *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1024 (9th Cir. 2001). Rather, the FTCA "provides a waiver of sovereign immunity for tortious acts of an agency's employees only if such torts committed [by] a private person would have given rise to liability under state law." *Pereira v. U.S. Postal Serv.*, 964 F.2d 873, 876 (1990); *United States v. Olson*, 546 U.S. 43, 44 (2005). Accordingly, Plaintiff must identify the analogous state law under which the Government could be held liable. *Delta Sav. Bank*, 265 F.3d at 1025.

Plaintiff points to CAPA as the source of analogous state law giving rise to the Government's liability.[4] Plaintiff argues that if VARA did not exist, he could bring his suit against the Government under CAPA and the FTCA. The fact is, however, that VARA *does* exist, and it preempts CAPA if title did not pass from Plaintiff prior to VARA's effective date. October 20, 2006 Order at 6. In that event, only VARA–*i.e.*, federal law–would provide a basis for Plaintiff's claims based on his

---

[4] Plaintiff cites California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, as a possible source of state law, but provides no argument in support.

6

right of integrity in his work. This is true regardless of the identity of the defendant–whether a private party or a federal defendant.[5] If state law cannot provide a basis for relief because it is explicitly preempted, it follows that it cannot be used to meet the FTCA's "like circumstances" test for waiver of sovereign immunity. *See Golt v. United States*, 186 F.3d 1158, 1164 (9th Cir. 1999) (stating that a federal employee's state law wrongful termination claim may not proceed under the FTCA where federal law provides an exclusive remedy). Accordingly, the Court concludes that the FTCA provides no waiver here. The Court dismisses Plaintiff's VARA claim against the Government for lack of jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

### 2. The Copyright Waiver

Although Plaintiff does not allege it in his First Amended Complaint, both the Government and Plaintiff discuss the possibility of the application of the waiver of sovereign immunity for copyrights, 28 U.S.C. § 1498(b). In relevant part, 28 U.S.C. § 1498(b) provides: "[W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States . . . the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims . . . ." 28 U.S.C. § 1498(b). This Court therefore has no jurisdiction to hear claims of copyright infringement against the Government; such cases may be brought only in the Court of Federal Claims. Accordingly, the Court need not decide the question of whether section 1498(b) encompasses VARA in its waiver of sovereign immunity for copyright claims. However, the Court will dismiss the VARA claim without prejudice to Plaintiff's right to bring such a claim in the Court of Federal Claims.

### B. CAPA

---

[5] Accordingly, this Court previously held that if title remained with the Plaintiff after VARA's effective date, Plaintiff's CAPA claims against the *private* defendant PB Dewberry would be preempted and VARA alone would apply. October 20, 2006 Order at 6-7.

7

The Court previously determined that if title to the Ruscha Mural passed before VARA's effective date, CAPA governs Plaintiff's claim and it is *not* preempted. The remaining question is whether the federal government has waived sovereign immunity making it subject to suit under CAPA. The Court concludes that the Federal Tort Claims Act applies in that case.

As stated above, the FTCA waives "sovereign immunity for tortious acts of an agency's employees only if such torts committed [by] a private person would have given rise to liability under state law." *Pereira*, 964 F.2d at 876. Here, CAPA provides:

> No person, except an artist who owns and possesses a work of fine art which the artist has created, shall intentionally commit, or authorize the intentional commission of, any physical defacement, mutilation, alteration, or destruction of a work of fine art.

Cal Civ. Code § 987(c)(1). By its plain language, CAPA creates a statutory tort,[6] which if committed by a private person, gives rise to liability. Sovereign immunity, therefore, is waived by the FTCA. Plaintiff's CAPA claim against the United States is therefore properly brought. The Court concludes that if title passed from Plaintiff before VARA's effective date making CAPA applicable, then Plaintiff's claims against the Government for violation of CAPA are properly brought.

**II. Common Law Claims: Conversion and Negligence**

The Government argues that "VARA does not allow any tangible property interest of plaintiff in the mural here and, therefore, VARA preempts plaintiff's common law conversion claim." (Def.'s Mem. At 4.) VARA includes specific preemption language, stating that "all legal or equitable rights that *are equivalent to* any of the rights conferred by section 106A with respect to works of visual art to which the rights conferred by section 106A apply are governed exclusively by section

---

[6]The Government does not point to any language in the FTCA that would limit its waiver of sovereign immunity to common law torts.

8

106A and section 113(d). . . ." 17 U.S.C. § 113(d) (emphasis added). Excepted from this preemption are "any rights or remedies under the common law or statutes of any State with respect to . . . activities violating legal or equitable rights that *are not equivalent to* any of the rights conferred by section 106A with respect to works of visual art. . . ." 17 U.S.C. § 301(f)(2)(B) (emphasis added).

Here, Plaintiff alleges that he has an "ownership interest" in the mural (FAC ¶¶ 57, 61.); this is an interest separate and apart from his right of integrity in the work. Section 113(d)(1), which makes specific provisions for works of art incorporated into buildings, applies to the artist's right of integrity in the work. It does not affect other rights which the artist may possess in such a work, including copyright or title.[7] *See, e.g.,* 17 U.S.C. § 106A(b) ("Only the author of a work of visual art has the rights conferred [by VARA], *whether or not the author is the copyright owner*.") (emphasis added); *Id.* § 106A(e)(2) ("Ownership of the rights conferred [by VARA] with respect to a work of visual art *is distinct from ownership* of any copy of that work, or of a copyright or any exclusive right under a copyright of that work.") (emphasis added). Given VARA's specific language that it does not preempt "rights that are not equivalent to any of the rights" it confers, VARA does not preempt Plaintiff's common law conversion claim.

Similarly, the Government's argument that Plaintiff's negligence claim fails because "defendants had no duty of care other than as contained in VARA" (Def.'s Mem. at 21) is unavailing. Plaintiff's negligence claim here is not "based on federal defendants' alleged violation of VARA." (*Id.* at 22.) As the Court has previously explained, the negligence claim is based on Plaintiff's alleged "rights of ownership" in the mural. In a previous order, the Court determined that Plaintiff

---

[7]Plaintiff's explanation of this principle is apt: "The artist can transfer title to the work, or not; he can transfer one or more of the exclusive rights under copyright, or not; and he can waive his moral rights (but not transfer them), or not." (Opp'n at 13.)

9

> properly asserted in each of his common law causes of action that he 'has rights of ownership' in the Ruscha Mural. [First Am. Compl. ¶57, 61.] Those rights are distinct from his moral rights, protected by statute and the source of additional causes of action. Accordingly, the Court finds that the plaintiff has properly stated claims against [co-defendant] PB Dewberry for negligence and conversion.

2006 Order at 4. The Court then concluded that Plaintiff therefore was free to plead common law conversion and negligence claims. The Court discerns no new bases to set aside this finding with respect to the Government. Accordingly, the Government's motion to dismiss with respect to these claims is denied.

### III.  Unfair Competition Claim

Finally, Defendant insists that Plaintiff has failed to state a claim under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, because Plaintiff's predicate state law claims fail. The Court has already ruled that Plaintiff's CAPA, conversion, and negligence claims survive Defendant's Motion to Dismiss. Accordingly, Defendant's argument that there is no "underlying and independent claim of wrongdoing" to support a UCL claim fails. Plaintiff has fulfilled his burden at this stage in the proceedings by making the requisite factual allegations to state a claim for unfair competition.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the United States of America's Motion to Dismiss (docket no. 87).

**IT IS SO ORDERED.**

Dated: February 8, 2008.

_____
FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT